**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **FEDERAL HOME LOAN MORTGAGE CORPORATION**, <br><br> Plaintiff, <br><br> v. <br><br><br> **VE LAKEVIEW LP**, <br><br> Defendant. | **Case No.** _____ |

## VERIFIED COMPLAINT

### I.    INTRODUCTION AND RELIEF REQUESTED

1.    Plaintiff Federal Home Loan Mortgage Corporation, a corporation organized and existing under the laws of the United States ("**Freddie Mac**" or "**Plaintiff**"), hereby alleges the causes of action set forth in this Complaint against Defendant VE Lakeview LP, a Georgia limited partnership ("**Borrower**"), and thereby seeks declaratory relief against Borrower as well as the appointment of Chris Nielson of Trigild IVL, LLC as receiver (the "**Receiver**") to take possession of Borrower's real property located at 1105 Edward Street, Fort Valley, Georgia 31030 (the "**Property**").  The Property consists of 96-unit multifamily residential facility in Fort Valley, Georgia, known as Lakeview Apartments.

1

2.      Borrower has defaulted on its loan obligations to Freddie Mac pursuant to the terms of the Loan Documents (defined below).  The Property serves as collateral for the loan obligations of Borrower to Freddie Mac.

3.      As described below, Freddie Mac is contractually entitled to the immediate appointment of a receiver to take possession of the Property. Furthermore, the appointment of a receiver is appropriate because Borrower lacks the financial wherewithal to maintain and operate the Property, and, under the terms of the Loan Documents (defined below), it consented to the appointment of a receiver to take possession and to stabilize the financial and physical condition of the Property.

## II.      PARTIES

4.      Freddie Mac is a government-sponsored enterprise chartered by Congress and organized and existing under the laws of the United States, with its principal place of business in McLean, Virginia.  Congress chartered Freddie Mac to facilitate the nationwide secondary residential mortgage market.  *See* 12 U.S.C. § 1451.  Under its federal statutory charter, Freddie Mac has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing.

5.      The Housing and Economic Recovery Act of 2008 ("**HERA**"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq.*), established the

Federal Housing Finance Agency ("**FHFA**" or "**Conservator**") as Freddie Mac's primary regulator.

6.     HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." *See* 12 U.S.C. § 4617(j)(3).

7.     On September 6, 2008, pursuant to HERA, the Director of FHFA placed Freddie Mac into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a).  As Conservator, FHFA succeeded to all of Freddie Mac's rights, titles, powers, privileges, and assets.  12 U.S.C. § 4617(b)(2)(A)(i).  FHFA, as Conservator is statutorily empowered to "preserve and conserve [Freddie Mac's] assets and property," to "operate" Freddie Mac, to "perform all [of Freddie Mac's] functions in [Freddie Mac's] name," and to "collect all obligations and money due" Freddie Mac.  12 U.S.C. § 4617(b)(2)(B)(i)-(iv).  Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions … as a conservator."  12 U.S.C. § 4617(f).  Because a receiver derives its authority from the Court, Section 4617(f) also precludes a receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

8.     HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of

[Conservator], nor shall any involuntary lien attach to the property of [Conservator]." *See* 12 U.S.C. § 4617(j)(3).  Therefore, federal law prohibits any action by a third party that affects Freddie Mac's interest in the Loan Agreement, Note, or Security Instrument (defined below) owned by Freddie Mac or under which Freddie Mac is beneficiary.

9.    FHFA has represented to Freddie Mac that FHFA supports the appointment of a receiver on the terms set forth in the *Order Appointing Receiver* (the "**Proposed Order**") accompanying Freddie Mac's contemporaneously filed *Motion for the Appointment of a Receiver* (the "**Motion**").  However, FHFA has reserved its rights as to any other or different terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

10.    Borrower is a Georgia limited partnership that owns the Property.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. § 1452(f) and 28 U.S.C. § 1345.

12.    Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1391(b) because (i) the events giving rise to Freddie Mac's claims occurred in this District, (ii) the real Property that is the subject of Freddie Mac's receivership claim is located in this District, and (iii) the parties consented to venue in this Court in Article 11.02(b) of the Loan Agreement (as defined below).  Venue is proper in this

4

Division pursuant to Local Civil Rule 3.4 because the Property that is the subject of Freddie Mac's receivership claim is located in this Division.

## IV.   FACTS COMMON TO ALL COUNTS

### C.   The Loan Agreement, Note, and Security Instrument

13.    Freddie Mac is the holder of a loan in the principal amount of $2,564,000.00 (the "**Loan**") made to Borrower pursuant to a Multifamily Loan and Security Agreement dated September 24, 2021 (the "**Loan Agreement**") between Borrower as borrower and Walker & Dunlop, LLC as lender (the "**Original Lender**" or "**Servicer**").  The Loan is evidenced by a Multifamily Note dated September 24, 2021, in the face amount of $2,564,000.00 (the "**Note**").  True and correct copies of the Loan Agreement and the Note are attached hereto as **Exhibits A and B**, respectively.

14.    Borrower's obligations under the Loan Agreement and the Note were secured by the Multifamily Security Instrument, Assignment of Rents, and Security Agreement dated effective as of September 24, 2021, and recorded on October 5, 2021, in the Superior Court of Peach County, Georgia at Book 660, Pages 415-439 (the "**Security Instrument**"), encumbering the Property.  A true and correct copy of the Security Instrument is attached hereto as **Exhibit C**.

15.    Borrower is the owner of the Property and the obligor under the Loan Agreement, the Note, and the Security Instrument.  Sections 3 and 4 of the Security

Instrument include an absolute assignment of all current and future leases and rents to Freddie Mac, as Original Lender's successor and assignee.

**B.     The Assignments**

16.     The Original Lender as Assignor and Freddie Mac as Assignee entered into the Assignment of the Deed to Secure Debt, effective as of September 24, 2021 (the "**Security Instrument Assignment**").  The Security Instrument Assignment assigned and transferred all right, title, and interest in the Security Instrument and other related documents to Freddie Mac.  A true and correct copy of the Security Instrument Assignment is attached hereto as **Exhibit D**.

17.     The Original Lender as Assignor and Freddie Mac as Assignee also entered into the Omnibus Assignment, effective September 24, 2021 (the "**Omnibus Assignment**").  The Omnibus Assignment assigned and transferred all right, title, and interest in the Loan Agreement and other related documents to Freddie Mac.  A true and correct copy of the Omnibus Assignment is attached hereto as **Exhibit E**.

18.     The Original Lender likewise negotiated the Note to Freddie Mac without recourse.  Ex. B at 27.

**C.     Borrower's Defaults Under the Loan Documents**

19.     Borrower has defaulted under the Loan Agreement, the Note, and the Security Instrument (together with the Security Instrument Assignment and the Omnibus Assignment, the "**Loan Documents**") by failing to pay outstanding

amounts due under the Loan, plus late charges, default interest, attorneys' fees, and costs and expenses accrued to date.  Among other things, Borrower has further failed to pay insurance premiums and utilities bills on the Property as required by the Loan Documents.

20.    The Note has required at all relevant times that "[a]ll remaining Indebtedness, including all principal and interest, will be due and payable by Borrower on the Maturity Date," which is defined as "the earlier of (i) October 1, 2028" or  "(ii) the date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document . . . ."  Ex. B §§ 1(a), 3(h).  The Loan Agreement defines an Event of Default to exist if "Borrower fails to pay or deposit when due any amount required by the Note, th[e] Loan Agreement or any other Loan Document."  Ex. A § 9.01(a).

21.    The Note requires Borrower to make monthly installment payments on the Note, as set out in Section 3 of the Note, through the Maturity Date.  *See* Ex. B § 3(b)–(h).

22.    Borrower has not made an installment payment on the Note since February 1, 2025, constituting an ongoing Event of Default under Section 9.01(a) of the Loan Agreement.  Ex. A § 9.01(a).

23. Separately, the Loan Agreement provides that "Borrower will keep the Improvements insured at all times against relevant physical hazards that may cause damages to the Mortgaged Property as Lender may require." *See* Ex. A § 6.10(a). And relevant here, "[a]ll Property Insurance premiums and premiums for other Insurance required under this Section [] will be paid in the manner provided[.]" *See* Ex. A § 6.10(e).

24. Borrower failed to pay $88,796.75 in insurance premiums for the Property for the first fiscal quarter of 2026, resulting in an Insurance Advance carried out by Servicer and constituting an Event of Default under the Loan Agreement. *See* Ex. A § 6.10(e).

25. On or about April 28, 2026, Freddie Mac, through Servicer, wrote a letter to Borrower providing formal notice to Borrower of this Event of Default under the Loan Documents arising from this failure to pay insurance premiums for the Property. A true and correct copy of the April 28, 2026, Letter is attached hereto as **Exhibit F**.

26. The Loan Agreement also provides that "Borrower will (i) pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including utilities . . . )[.]" *See* Ex. A § 6.08(b).

27. Borrower has failed to pay its utility bills to the Fort Valley Utility Commission, requiring Freddie Mac to advance $50,000.00 from Borrower's escrow

account on September 25, 2025, to prevent the utilities from being shut off for the Property and its residential tenants.

28.    On or about May 15, 2026, Freddie Mac, through Servicer, wrote another letter to Borrower providing formal notice to Borrower of this Event of Default arising from the failure to pay the utility bills for the Property and failure to remit such funds to Borrower's escrow account.  A true and correct copy of the May 15, 2026 Letter is attached hereto as **Exhibit G**.

29.    On or about June 4, 2026, Freddie Mac, through a letter from counsel, again notified Borrower of the aforementioned Events of Default, notified Borrower of the Event of Default arising from Borrower's failure to make any monthly installment payments since February 1, 2025, and notified Borrower that Freddie Mac intended to foreclose on the property.  A true and correct copy of the June 4, 2026 letter is attached hereto as **Exhibit H**.

30.    Borrower has failed to cure these and other Events of Default under the Loan Documents.

31.    As of June 13, 2026, the outstanding aggregate amount due from Borrower to Freddie Mac under the Loan Documents was $1,911,262.21, which includes an aggregate amount of $2,680,510.22 less an escrow credit of $769,248.01.  Interest, costs, expenses, late charges, and other fees and costs

continue to accrue under the terms of the Loan Documents including, without limitation, Freddie Mac's attorneys' fees and costs and expenses.

32.    Upon information and belief, Borrower lacks the financial wherewithal to continue to operate and maintain the Property.

### E.    Grounds for Appointing a Receiver

33.    Compelling grounds exist for the immediate appointment of a receiver and granting injunctive relief.

34.    An Event of Default dating back to March 2025 exists and continues under the Loan Documents.

35.    Freddie Mac is entitled as a matter of right to apply to any court having jurisdiction for the appointment of a receiver for the Property following an Event of Default.

36.    Borrower has already expressly consented to the appointment of a receiver by executing the Security Instrument. The Security Instrument states in relevant part as follows:

> Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and *without the necessity of giving prior notice (oral or written) to Borrower*, Lender may apply to any court having jurisdiction *for the appointment of a receiver* for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is

10

continuing, Borrower, by its execution of this Instrument, ***expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte*** if permitted by applicable law.

Ex. C § 3(c)(ii) (emphasis added).

37. The Property is in imminent danger of being damaged and diminished in value because, upon information and belief, Borrower lacks funds to operate the Property in a sufficient and appropriate way, as evidenced by the failure to pay the Indebtedness, Borrower's failure to pay insurance premiums, Borrower's failure to pay the Property's utility bills, and current health and safety issues now arising from the property.

38. The Property is in poor condition with several health and safety related concerns. An inspection conducted in 2025 by the U.S. Department of Housing and Urban Development found significant and life-threatening issues with conditions on the Property.  A true and correct copy of the report for the inspection conducted by HUD is attached hereto as **Exhibit I**.

39. Further, an inspection conducted on behalf of Freddie Mac found significant safety hazards on the property, including fire and water damage, and indicated that the property was in immediate need of substantial repairs.  A true and correct copy of the report for the inspection conducted on behalf of Freddie Mac is attached hereto as **Exhibit J**.

40.    The Property is a 96-unit multifamily residential facility.    The appointment of a receiver is important to make sure that the Property is properly maintained and that the residents of the Property can safely continue their tenancy uninterrupted before, during, and after any foreclosure or sale.

41.    Without a receiver to collect rents and manage the Property, there is currently manifest danger of loss, deterioration, and diminution of the Property which, along with the rents, are the primary sources for repayment of the Loan. Freddie Mac, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower.

42.    The appointment of a receiver is also important to preserve and protect the Property and to sell the Property in an orderly and professional manner that maximizes the value of the Property, while continuing to ensure that the residents of the Property receive uninterrupted care during this process.

## COUNT I

### (Breach of Contract)

43.    Freddie Mac hereby incorporates by reference all of the foregoing allegations of this Complaint as though fully set forth herein.

44.    The Loan Documents constitute a binding contractual relationship between the parties.

45.    Freddie Mac has performed all of its obligations under the Loan Documents.

46.    Borrower's failure to make payments when due, failure to pay insurance premiums for the Property, and failure to pay the Property's utility bills constitute separate and independent breaches of the Loan Documents.

47.    As a direct and proximate result of Borrower's breach, Freddie Mac has incurred and will continue to incur actual damages in the amount of $1,911,262.21 as of June 13, 2026, which includes an aggregate amount of $2,680,510.22 less an escrow credit of $769,248.01, plus all interest, costs, expenses, late charges, and other fees and costs that continue to accrue under the Loan Documents, for which Lender seeks recovery from Borrower.

## COUNT II

### (Appointment Of Receiver)

48.    Freddie Mac hereby incorporates by reference all of the foregoing allegations of this Complaint as though fully set forth herein.

49.    This Court has the legal and equitable power to appoint a receiver.

50.    Pursuant to Federal Rule of Civil Procedure 66, this Court is authorized to appoint a receiver over the Property.

51.    The appointment of a receiver to take control of and manage the Property is proper under the circumstances.

52.     As a result of Borrower's default under the Loan Documents, Lender is entitled to the appointment of a receiver both under the express terms of the Loan Documents and because equitable considerations weigh heavily in favor of such appointment.

53.     Under Section 9.01 of the Loan Agreement, any failure by Borrower to pay or deposit when due any amount required by the Note, the Loan Agreement, or any other Loan Document constitutes an "Event of Default" under the Loan Agreement.

54.     Pursuant to Section 3(c)(ii) of the Security Instrument, Borrower agreed to and recognized Freddie Mac's right to the appointment of a receiver upon an Event of Default, without notice.

55.     Specifically, in Section 3(c)(ii) of the Security Instrument, Borrower as grantor thereunder expressly authorized and consented to the appointment of a receiver following an Event of Default as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. ***If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including***

> ***the appointment of a receiver ex parte if permitted by applicable law.***

Ex. C § 3(c)(ii) (emphasis added).

56.    In Section 3(c)(v) of the Security Instrument, Borrower further agreed that, following an Event of Default, Borrower would (i) surrender possession of the Property to a receiver and (ii) cooperate fully with the receiver's efforts to take control of the Property:

> Immediately upon appointment of a receiver . . . Borrower will surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and will deliver to Lender or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.

*Id*. § 3(c)(v)

57.    Because Borrower has consented to the appointment of a receiver following an Event of Default under the Security Instrument, and because Events of Default have occurred and remain uncured, Freddie Mac respectfully requests that the Court appoint a receiver for the Property.

58.    In addition to Freddie Mac's contractual right to the appointment of a receiver under the Security Instrument based on Borrower's agreed-to consent, the appointment of a receiver is appropriate under the Court's equitable powers given (i) Borrower's lack of financial wherewithal to continue to operate and maintain the

Property, and (ii) the consequent danger of the Property being harmed and diminishing in value in the event that it is not properly operated and maintained.

59.    As described in Freddie Mac's accompanying Motion, a receivership is necessary and desirable to preserve the Property and protect it against damage, loss, or destruction, and protect the safety of the Property's residents. Likewise, a receivership is needed to account properly for, and collect, the rents, revenues, and profits generated by the Property.

60.    FHFA has advised Freddie Mac that FHFA supports the appointment of the receiver on the terms set forth in the Proposed Order.

61.    In order to protect and preserve the value of the Property and Freddie Mac's security interest therein, and to prevent waste and material injury to the Property, it is necessary that a receiver be appointed pursuant to Section 3(c)(ii) of the Security Instrument and the equitable powers of this Court to (i) take possession of the Property, (ii) collect its rents, issues, revenue, income and profits, and (iii) operate and manage the Property pending the completion of this case.

## COUNT III

### (Accounting)

62.    Freddie Mac hereby incorporates by reference all of the foregoing allegations of this Complaint as though fully set forth herein.

16

63.     Pursuant to Sections 6.07 and 6.17 of the Loan Agreement, Borrower is required to furnish to Freddie Mac, in a format certified by Borrower, complete and accurate periodic statements of income and expenses for the Property and other information, including a rent schedule and accounting of security deposits, and Borrower is required to permit Freddie Mac to examine and inspect the books, records, contracts and leases for the Property.

64.     Freddie Mac is entitled to an order requiring Borrower to provide Freddie Mac with the financial information and reporting required under the Loan Documents and to permit Freddie Mac to inspect Borrower's books and records for the Property.

## V.     PRAYERS FOR RELIEF

WHEREFORE, Freddie Mac prays for relief as follows:

1.     For the entry of an order appointing a receiver to take possession and control of the Property, collect its rents, issues, revenue, income and profits, and otherwise operate and manage the Property, pending the completion of this case or further order of this Court;

2.     For the entry of an order requiring Borrower to provide Freddie Mac with the financial information and reporting required under the Loan Documents and to permit Freddie Mac to inspect Borrower's books and records for the Property;

3.      Judgment against Borrower for all amounts owed under the Loan

Documents;

4.      Prejudgment interest as provided by law;

5.      Post-judgment interest as provided by law;

6.      An award of attorneys' fees in accordance with the Loan Documents;

7.      Cost of suit; and

4.      For such other and further relief as the Court deems just and equitable.


DATED: June 30, 2026                    Respectfully submitted,


                                        */s/ Christopher A. Riley*
                                        Christopher A. Riley
                                        Georgia Bar No. 605634
                                        John Evan Laughter
                                        Georgia Bar No. 772462

                                        ALSTON & BIRD LLP
                                        1201 West Peachtree Street
                                        Atlanta, Georgia 30309
                                        404-881-7000 (telephone)
                                        404-881-7777 (facsimile)
                                        chris.riley@alston.com
                                        johnevan.laughter@alston.com

                                        *Counsel for Plaintiff*

18

## VERIFICATION

NOW COMES, Alejandro Rivero, Senior Manager of the Multifamily Asset Management Team of the Federal Home Loan Mortgage Corporation, Plaintiff, and deposes and states that he has read Plaintiff's Verified Complaint in the above-styled action, and declares under penalty of perjury that all facts and statements contained therein are true and correct to the best of his personal knowledge.

Executed on: June 30, 2026

_____
Alejandro Rivero

Sworn to and subscribed before me

This  3ɔ  day of June, 2026.

_____
Notary Public

My Commission Expires:  06/30/2027

RENEE MARIE BENN
Notary Public
Commonwealth of Virginia
Registration No. 8058088
My Commission Expires Jun 30, 2027

19